COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Ortiz and Chaney
Argued at Fairfax, Virginia


R.T.

                                                    OPINION BY
v.        Record No. 1614-24-4                JUDGE VERNIDA R. CHANEY
                                                  DECEMBER 9, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David A. Oblon, Judge

Liza Greenspun Yang (Greenspun Shapiro PC, on briefs), for
appellant.

(Steve T. Descano, Commonwealth's Attorney; Chaim Mandelbaum,
Assistant Commonwealth's Attorney, on brief), for appellee.
Appellee submitting on brief.[1]


R.T. appeals the circuit court's denial of his petition for expungement under Code

§ 19.2-392.2.[2]  He sought to expunge police and court records, including an emergency

protective order issued the same day as his criminal charges and a subsequent preliminary

protective order.  The Commonwealth agreed only to the expungement of the criminal charges.

The circuit court granted expungement of the arrest and court records but denied expungement of

---

[1] Appellee waived oral argument.  However, Assistant Commonwealth's Attorney Chaim
Mandelbaum appeared at the panel's request to answer the Court's questions.

[2] In a matter of an expungement order, this Court uses the petitioners' initials, rather than
their full names, to protect their privacy and minimize any potential effect on the petitioners.
Employing the petitioners' "full name would be counterproductive to the object of the
expungement petition." *A.R.A. v. Commonwealth*, 295 Va. 153, 153 n.1 (2018).  "Portions of the
record in this case are sealed, 'but this appeal necessitates unsealing relevant portions of the
record to resolve the issues [appellant] raise[s].  Accordingly, "[t]o the extent that this opinion
mentions facts found in the sealed record, we unseal only those specific facts[.]"'" *Perkins v.
Commonwealth*, 84 Va. App. 519, 524 n.5 (2025) (alterations in original) (quoting *Williams v.
Panter*, 83 Va. App. 520, 527 n.1 (2025)).

the protective orders, finding that the facts before it demonstrated the emergency protective order[3] did not "relate to" the criminal charges. Because R.T. offered no evidence connecting the protective orders to the dismissed criminal charges beyond temporal proximity and the same shared parties, the circuit court did not abuse its discretion in denying the expungement.

BACKGROUND[4]

On July 27, 2023, at 2:16 p.m., M.T. obtained an emergency protective order against her spouse, R.T., based solely on her sworn statement alleging assault. The emergency protective order stated that M.T. was "assaulted by [R.T.], causing visible injuries." On the emergency protective order, the issuing magistrate checked the box, finding that "[r]easonable grounds exist to believe that [R.T.] has committed family abuse and there is probable danger of a further such offense against [M.T.]." The magistrate did not check the alternative box, which would have found that "[a] warrant for a violation of [Code] § 18.2-57.2 has been issued and there is a probable danger of further acts of family abuse against the allegedly abused person."

Three hours later, a Fairfax County police officer appeared before a different magistrate, which issued three criminal arrest warrants against R.T.—for two felony counts of strangulation

---

[3] The circuit court noted that

> [t]he parties did not provide the Court with the September 8, 2023, Order. In the event it materially differs from the [emergency protective order], the burden was on the Petitioner to include it in his Petition, or to introduce it into evidence at the hearing. The Court, therefore, considers the [emergency protective order] and [p]reliminary [p]rotective [o]rder to be substantively identical for the purposes of determining relatedness to the expunged criminal charge.

For this reason, this Court addresses the emergency protective order and also considers it to be substantively identical to the preliminary protective order for purposes of its analysis.

[4] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the [circuit] court.'" *Pereira v. Commonwealth*, 83 Va. App. 431, 439 n.3 (2025) (quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)).

in violation of Code § 18.2-51.6 and one misdemeanor count of assault and battery of a family member in violation of Code § 18.2-57.2. The warrants were issued between 5:04 and 5:06 p.m., and R.T. was arrested two days later.

On July 31, 2023, the juvenile and domestic relations district court (JDR court) granted M.T. a preliminary protective order against R.T. following an ex parte hearing.[5] The preliminary protective order temporarily extended protections and provided R.T. notice of a "full hearing." That order was formally entered on the circuit court's docket on September 8, 2023.[6] No "full hearing" occurred because the parties later agreed to dissolve the preliminary protective order. By consent order entered November 13, 2023, the court dissolved the preliminary protective order and dismissed the petition for a permanent protective order with prejudice.

As for the criminal charges, the Commonwealth moved to nolle prosequi the assault and battery charge on October 27, 2023, in JDR court, and the strangulation charges on November 28, 2023, in the circuit court. Both motions were granted without objection.

In April 2024, R.T. filed a petition for expungement in circuit court, seeking to expunge the three criminal charges, "police and court records relating to" his arrest, and both protective

---

[5] The preliminary protective order stated that the petition was supported by affidavit or sworn testimony and that either M.T. was in "immediate and present danger" or that probable cause existed to believe that family abuse had recently occurred.

[6] The consent order states, "the [PPO] entered on September 8, 2023 having been entered ex parte." It is unclear from the record whether there were two separate preliminary protective orders issued, one in July and one in September. However, the "having been entered ex parte" suggests that it is the same preliminary protective order from July 31, 2023.

orders.  The Commonwealth signed agreed expungement orders for each of the three nolle prossed charges, but objected to the expungement of both protective orders.[7]

The circuit court conducted a hearing on August 26, 2024,[8] and later issued an order expunging the criminal records while denying expungement of the protective orders.  In its letter opinion, the court held that under Code § 19.2-392.2, "it may not expunge a protective order that does not issue because of a criminal arrest."[9]  The court reasoned that neither the warrant nor the emergency protective order indicates connections to the other and that "anyone looking at [R.T.'s] [emergency protective order] cannot discern that [R.T.] was ever charged with Domestic Assault and Battery[.]"  R. 56-57, 155-56.  This appeal followed.

ANALYSIS

On appeal, R.T. argues that the circuit court erred in concluding that the emergency protective order did not "relate to" his expunged criminal charges.  He reasons that "the emergency protective order was obtained the same day and based on the same allegations as

---

[7] The court entered the agreed orders granting the expungement of the criminal charges. "The Commonwealth principally objected to the expungement of the [emergency protective order] in this case because the General Assembly recently attempted to pass legislation that would have added a statute permitting the expungement of a variety of emergency and preliminary protective orders, regardless of the basis of their issuance.  2020 Bill Text Va. S.B. 1264 (Jan. 11, 2021)."

[8] In lieu of a transcript from this proceeding, this Court received a certified written statement of facts from the circuit court filed by the parties under Rule 5A:8(c).

[9] The circuit court also stated:

> The Court holds that when it expunges a criminal charge it may not expunge a contemporaneously issued protective order unless the criminal charge caused the issuance of the protective order, or the protective order refers to the criminal charge.  This is true even if both the criminal charge and the protective order rely on the same facts.

This opinion does not adopt either of these characterized "holdings" as dispositive of the issues before us.

- 4 -

three criminal warrants, the criminal warrants have since been expunged, and the preliminary protective order was dissolved by agreement without a hearing."[10]  R.T. emphasizes that both the emergency protective order and the criminal warrants arose from the same incident on July 26, 2023, involved the same complainant, M.T., and were issued within three hours of each other on July 27.  He concludes that these collective facts make clear that the emergency protective order must have been "related to" the criminal warrants.

The Commonwealth argues that the emergency protective order was issued by a different magistrate three hours before the criminal warrants and was based solely on M.T.'s sworn testimony, not on any arrest or criminal process.  The Commonwealth also argued that the court did not abuse its discretion because the limited evidence before the circuit court did not establish a connection between the emergency protective order and the later-issued warrants.

---

[10] He further argues that "Code § 19.2-392.2 allows for expungement where the dissemination of records relating to the offense(s) may cause circumstances that constitute manifest injustice."
Code § 19.2-392.2(F) provides that

> If the court finds that the continued existence and possible dissemination of information relating to the arrest of the petitioner causes or may cause circumstances which constitute a manifest injustice to the petitioner, it shall enter an order requiring the expungement of the police and court records, including electronic records, relating to the charge.

But as explained below, the "threshold determination to be made by the trial court on considering any petition for expungement . . . is whether the petitioner has a right to seek expungement of those records under an applicable provision of Code § 19.2-392.2(A)." *A.R.A.*, 295 Va. at 158 (alteration in original) (quoting *Daniel v. Commonwealth*, 268 Va. 523, 530 (2004)); *see also Forness v. Commonwealth*, 302 Va. 1, 4 (2023) ("When considering a petition for expungement, the threshold determination 'is whether the petitioner has a right to seek expungement . . . under an applicable provision of Code § 19.2-392[.2](A)." (first alteration in original) (quoting *Daniel*, 268 Va. at 530)).  Here, because the circuit court ultimately found that R.T. did not satisfy his statutory burden under subsection (A), it properly declined to reach subsection (F).

I. Standard of Review

We review a circuit court's decision to grant or deny expungement under Code § 19.2-392.2(A) for an abuse of discretion. *A.R.A. v. Commonwealth*, 295 Va. 153, 160 (2018) (applying an abuse of discretion standard under subsection (F) of the expungement statute). "A court has abused its discretion if its decision was affected by an error of law or was one with which no reasonable jurist could agree." *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022); *see also Hicks v. Commonwealth*, 71 Va. App. 255, 270 (2019) ("Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005))).

"[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance." *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013) (quoting *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008)). That "standard draws a line—or rather, demarcates a region— between the unsupportable and the merely mistaken, between the legal error, disorder of reason, severe lapse of judgment, and procedural failure that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Id.* (quoting *Evans*, 514 F.3d at 322).

The circuit court's factual findings will not be disturbed unless they are plainly wrong or without supporting evidence. *Chamberlain v. Marshall Auto & Truck Ctr., Inc.*, 293 Va. 238, 242 (2017). Questions of law are reviewed de novo. *Dressner v. Commonwealth*, 285 Va. 1, 5 (2013) (applying de novo review to the question of "whether the possession of marijuana charge was 'otherwise dismissed' pursuant to Code § 19.2-392.2(A)"); *Obregon v. Commonwealth*, 75 Va. App. 582, 586-87 (2022) (applying de novo review to the trial court's interpretation of the word "may" in Code § 19.2-392.2(F)).

II. Code § 19.2-392.2(A)'s Statutory Framework and Burden of Proof

The expungement statute provides, in relevant part:

> A. If a person is charged with the commission of a crime, a civil offense, or any offense defined in Title 18.2, and
>
> > 1. Is acquitted, or
> >
> > 2. A nolle prosequi is taken or the charge is otherwise dismissed, including dismissal by accord and satisfaction pursuant to § 19.2-151, he may file a petition setting forth the relevant facts and requesting expungement of the police records and the court records *relating to the charge*.

Code § 19.2-392.2 (emphasis added).

The "threshold determination to be made by the trial court on considering any petition for expungement . . . is whether the petitioner has a right to seek expungement of those records under an applicable provision of Code § 19.2-392.2(A)." *A.R.A.*, 295 Va. at 158 (alteration in original) (quoting *Daniel v. Commonwealth*, 268 Va. 523, 530 (2004)). Under Code § 19.2-392.2(A)(2), if "a person is charged with the commission of a crime" and a "nolle prosequi is taken . . . he may file a petition . . . requesting expungement of the police records and the court records *relating to the charge*." (Emphasis added).

Here, the Commonwealth charged R.T. with three offenses that were later nolle prossed. The circuit court expunged those criminal records; however, the court denied expungement of the protective orders, finding that the emergency protective order did not "relate to" the criminal charges.

The petitioner bears the burden of proving that he meets the statutory requirements for expungement, including demonstrating that court records such as protective orders "relate to" his criminal charges. *See A.R.A.*, 295 Va. at 160. According to the record, R.T. presented no testimony or other evidence beyond the dates, names, and brief notations on the emergency protective order and the arrest warrants. As the court observed, R.T. failed to include a copy of

the preliminary protective order in the record or any supporting materials for its consideration. On this limited record, R.T. highlights facts linking the emergency protective order and the criminal charges, primarily the timing of the protective orders and warrants, and the identity of the complainant. However, the circuit court concluded that the orders were "ineligible for expungement."

### III. The Circuit Court's Factual Findings and the Limited Record

The circuit court found that R.T. failed to satisfy Code § 19.2-392.2(A) because he did not demonstrate that the emergency protective order "relat[es] to" his criminal charges. In other words, the court found insufficient evidence that connected the emergency protective order to the arrest warrants.

R.T. argues that the court erred in concluding that the emergency protective order issued on July 27, 2023, did not "relate to" his later-expunged criminal charges for strangulation and assault and battery of a family member. He emphasizes that the emergency protective order and the warrants "arose out of the same incident" and "on the same day" and that both referenced the same complainant, M.T. He asserts that these facts are sufficient to satisfy his burden of proving the "relate to" requirement under Code § 19.2-392.2(A)(2). This Court disagrees.

The circuit court determined, and R.T. does not challenge, that the term "relate to" in Code § 19.2-392.2(A) is unambiguous, meaning "connection with (something else)" or "to be connected with (someone or something)."[11] R. 55, 154. Applying that meaning to the specific

---

[11] Neither this Court nor the Supreme Court of Virginia has interpreted the phrase "relate to" in Code § 19.2-392.2(A). While we acknowledge that the term has been broadly construed in other contexts, we need not decide its precise contours or limits here. *E.g.*, *Mellouli v. Lynch*, 575 U.S. 798, 811 (2015) (finding the phrase "relating to" is "broad" and "indeterminate").

Although the Commonwealth disputes the circuit court's interpretation, R.T. agreed with it below and on appeal only challenges the court's application of the court's interpretation to the facts. Applying judicial restraint, we resolve this case "on the best and narrowest grounds available." *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (quotation omitted). The "best"

- 8 -

facts alleged, the circuit court found R.T.'s limited evidence insufficient to establish that the emergency protective order "relate[s] to" the criminal warrants.  The court explained:

> In the case at bar, pursuant to Virginia Code § 16.1-253.4, a magistrate issued an [emergency protective order] at the request of [M.T.] hours before police obtained a warrant to arrest [R.T.] for Domestic Assault and Battery from a different magistrate.  Since the [emergency protective order] preceded the warrant, the warrant could not possibly have caused the [emergency protective order].  Indeed, the [emergency protective order] expressly issued based on the sworn testimony of [M.T.].  Nor does the warrant and [emergency protective order] themselves indicate connections to each other or one to the other.

R. 56, 155.  Given this record, the circuit court's conclusion was reasonable and supported by evidence.

The record before the circuit court was limited.  The only documents before the court were the emergency protective order and the arrest warrants issued later the same day.  That evidence does not establish that the emergency protective order was caused by or connected to the later-issued warrants.  The temporal proximity and same shared parties, without more, were reasonably determined by the circuit court not to satisfy Code § 19.2-392.2(A).

R.T. did not testify, provide a relevant reason in his affidavit, or present any other evidence that the emergency protective order was issued because of or in reference to the criminal warrants.  At most, he highlighted the emergency protective order's notation that "[M.T.] was assaulted by [R.T.] causing visible injuries," and suggested that such language indicates the emergency protective order "would lead to criminal charges."  This does not establish that the emergency protective order was caused by or connected to these specific

---

ground is the one agreed upon by the largest number of jurists, and the "narrowest" ground is the one affecting the fewest cases.  *Id.*  Resolving this appeal as petitioned on the circuit court's factual findings is the best and narrowest course.  For purposes of this appeal, this Court analyzes whether the circuit court erred in applying the specific facts to the definition provided in the court below.

subsequent criminal charges.  The notation does not explain when, or even whether, criminal charges would be brought.  Speculation that an emergency protective order *might* lead to criminal charges is insufficient to satisfy R.T.'s burden.

The circuit court thought likewise, observing that "the [emergency protective order] preceded the warrant" and that "anyone looking at [R.T.'s] [emergency protective order] cannot discern that [he] was ever charged with Domestic Assault and Battery."  R. 57, 156.[12]  The record contains no affidavit from R.T. or other supporting documentation attached to the emergency protective order referencing the resulting criminal charges.  Although Code § 19.2-392.2 does not prescribe a particular level of proof,[13] the burden remained on R.T. to provide evidence satisfying the "relate to" requirement.  He did not.

The court noted that "[i]t is the burden of the Petitioner to include Orders or evidence at the hearing" and that R.T. failed to provide a copy of the preliminary protective order or any evidence supporting the basis of the emergency protective order.  R. 54 n.2, 153 n.2. Furthermore, the preliminary protective order was granted ex parte and was later dissolved by consent order, without a merits hearing for a permanent protective order.  As a result, there was never a proceeding in which R.T. developed an evidentiary record connecting the emergency protective order or preliminary protective order to the expunged criminal charges.  R.T. produced

_____

[12] R.T. asserts that "[a]ny person who sees these notes on the emergency protective order would know that an alleged assault causing injuries would lead to criminal charges."  However, the circuit court did not find that fact supported.  R. 56-57, 155-56.  That decision is not plainly wrong or without evidence to support it.  And we will not accept R.T.'s proposed inference.  On appeal, we must view the facts in the light most favorable to the Commonwealth as it prevailed at the circuit court.  *See Pereira*, 83 Va. App. at 439 n.3.

[13] The Commonwealth, at oral argument, suggested that the evidentiary standard is "more likely than not."

no protective order affidavit, testimony, or other evidence showing that the emergency protective order caused or was connected to the later-issued criminal warrants.[14]

With no further development of the record, the court only considered evidence regarding the timing of the emergency protective order and the warrant, the shared complaining witness, and the language of the protective order.[15] It found, as a factual matter, that the arrest did not "cause the issuance of the protective order" and that the emergency protective order does not "refer[] to the criminal charge." R. 56-57, 155-56. The face of the emergency protective order supports this finding. The magistrate checked the box stating, "[r]easonable grounds exist to believe that [R.T.] has committed family abuse," and left blank the alternative box that would have found "a warrant for a violation of Code § 18.2-57.2 ha[d] been issued." This omission confirms that the magistrate issued the emergency protective order based on M.T.'s sworn statement, not on the issuance of a criminal warrant. Notably, the circuit court factually distinguished this case from *A.M.Z.P. v. Commonwealth*, 113 Va. Cir. 72, 75 (Fairfax Cnty. 2024), where expungement had been granted when "[t]he [emergency protective order] issue[d] against Petitioner explicitly state[d] that it was entered based on the issuance of a criminal

---

[14] R.T.'s affidavit attached to the petition for expungement explains only his reasoning for his concern that the record may impair his ability to work and livelihood.

[15] R.T. also points to the connection between the case numbers for the emergency protective order and charges. R.T. notes that each case number starts with the base number JA440516, followed by suffixes reflecting the order of filed entries in the record. The three criminal charges are labeled 01, 02, 03, and the emergency protective order is labeled 04. Although the court did not specifically address the case numbers, it was a fact known to the court. The sequential order of the case numbers does not conflict with the court's finding that the documents do not "indicate connections to each other or one to the other," or that "anyone looking at [R.T.'s] [emergency protective order] cannot discern that [R.T.] was ever charged with Assault and Battery."

- 11 -

warrant."[16]  Unlike in *A.M.Z.P.*, the emergency protective order issued here, before R.T.'s arrest warrants, does not explicitly reference the criminal charges or warrants as its basis for issuance. That distinction supported the circuit court's conclusion.

In sum, the limited record—comprising only the emergency protective order and arrest warrants—shows that R.T. failed to meet his evidentiary burden to demonstrate that the emergency protective order "relates to" his expunged criminal charges.  The circuit court's factual findings, based on the language of the emergency protective order, the timing of that order before the warrants,[17] and the lack of evidentiary connection, were reasonable.  On this basis, the court's decision falls well within its discretion.[18]

CONCLUSION

Since R.T. failed to meet his statutory burden of showing that the protective orders "relate to" his criminal charges, the circuit court's denial of expungement of the protective orders

---

[16] As a Circuit Court of Fairfax County case, *A.M.Z.P.* is not binding precedent on this Court.  *See City of Va. Beach v. Mathias*, 85 Va. App. 94, 116 (2025) ("[C]ircuit court decisions are not binding."); *McGinnis v. McGinnis*, 69 Va. App. 572, 580 (2018) ("[A] Virginia case from the Circuit Court of Fairfax County[] is not binding precedent for this Court.").  Even if *A.M.Z.P.* were binding authority, it is factually distinguishable.

[17] As the Commonwealth highlighted during oral argument, the timeline of events is not, by itself, concrete evidence of a connection or reference between the criminal warrants and the emergency protective order.

[18] Even if the record supported R.T.'s preferred inferences, that does not render the court's decision an abuse of discretion.  "A court . . . abuse[s] its discretion if its decision was affected by an error of law or was one with which no reasonable jurist could agree." *Tomlin*, 74 Va. App. at 409; *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016).  Here, the court considered the timing between the orders and the criminal warrants, the shared complaining witness, the language of the emergency protective order, and the absence of evidence connecting that order to the criminal warrants.  Nothing in the record shows that the court ignored a relevant factor, relied on an improper one, or committed a clear error of judgment.  *See Kenner v. Commonwealth*, 299 Va. 414, 423 (2021).  Accordingly, the court's determination falls within the permissible range of its discretion.

- 12 -

was supported by the evidence and within its discretion.  Accordingly, this Court affirms the circuit court's judgment.

*Affirmed.*